This is the time and place a set for supplemental order argument in the case of Crowe v. Wormuth. We are all appearing virtually. Before we begin arguments, I would like to remind council that the focus of this argument is on the jurisdiction of the Merit Systems Protection Board. We may ask other questions, but for now, we'd like you to focus on that question. It's my understanding that Mr. Fung for the Merit Systems Protection Board will be proceeding first? Yes. All right, please proceed. Thank you. May it please the court. My name is Stephen Fung and I represent the amicus, the MSPB. The district court incorrectly held that Mr. Crowe should have brought his pre-removal actions to the board to exhaust those actions. The CSRA only permits the MSPB to hear appeals of specific enumerated adverse actions, such as removals or longer suspensions. That's true for mixed cases as well. The statute specifically limits mixed cases to claims already appealable to the MSPB. No matter what policy goals may be advanced, the CSRA simply does not permit the board to assert over inextricably intertwined claims, not otherwise within the jurisdiction. Actions such as seven-day suspensions, hostile work environments, letters of reprimand, or Mr. Crowe's allegations of an improper investigation are not appealable to the board under Chapter 75 Appeal Authority. And that's true even if those actions involve discrimination or even if they're inextricably intertwined with an action within the board's jurisdiction. If a federal employee wants to have a claim of discrimination for one of those less severe personnel actions adjudicated, Congress gave the employee a different route, the EEOC. Under the structure designed by Congress, all claims of discrimination for less severe personnel actions must go to the EEOC. The MSPB was never meant to hear those kinds of claims. No exception was included in the CSRA, no matter whether those claims are considered inextricably intertwined or not. So the employee here could have brought all of this in front of the EEOC, right? Yes, with the exception of the removal. The remainder of the claims, yes. Wait a minute, he could not challenge the removal in front of the EEOC? I thought he could do that. Under the mixed case process, he could bring the removal to the EEOC, but eventually the authority of the EEOC would be to investigate it and issue a final agency decision. If he wanted a hearing on the removal, he would have to have a hearing at the MSPB. What I'm trying to understand, in this case, Mr. Crow bifurcated the proceedings, right? He tried to take what you're calling a mixed case to the MSPB, and he was trying to keep the other pre-termination claims in front of the EEO. Why would an employee want to do that? Whether an employee would want to do that isn't really the question of the board's jurisdiction in as much as it is the board's only allowed to hear the removal. I understand that position, but he could have kept everything in the EEO. And if he lost there, he could have either gone to the MSPB with those portions of it that the MSPB had jurisdiction over, or he could have gone to the district court. And here, he broke it in two. And I'm trying to understand from an employee's, government employee's perspective, why do that? Because it seems somewhat inefficient. There is some inefficiency in the process. You're not wrong. If he wanted to keep the claims together, he could have kept them in the EEO office and taken them straight to district court. But if he wanted an administrative forum to hear anything about, hear his claim on his removal, the only place he could have that or have a hearing for that claim would be the MSPB. So is the suggestion that the MSPB offers him some different procedures, is that why he wanted to do this or why one would want to do this? The MSPB offers him a chance to actually have hearing on the case, such as having witnesses and discovery and evidence and an administrative judge to rule on it before he has to take it to district court. Okay. How about from a remedies standpoint? Are there any differences between the remedies that the MSPB could provide and what the EEO could provide? The EEO couldn't provide any remedy for the removal. It could provide remedies for their other actions, such as the investigation or the loss of overtime. It could not provide remedies for the removal. Why not? Well, I think I take that back. I'm sorry. If in a final agency decision, the EEO office determined that the removal was discriminatory, it could provide remedies, but it couldn't. It could provide back pay, but it couldn't do anything such as a hearing to provide that. Is there any kind of reinstatement remedy where you get reinstated? If you were fired wrongfully, you could be reinstated? Yes. And if the agency found in a final agency decision that the removal was discriminatory, the agency could reinstate the employee and the board could also. Counsel, could the EEOC order reinstatement? I do not believe so. No. Well, not at that initial stage. And again, I apologize. I know the mixed case procedures are confusing. But after the board ruled on the removal, the EEOC then has a chance to weigh in on the board's decision if it wants through the mixed case review process. And at that point, the EEOC is actually free to disagree with MSPB. And if that happens, then it goes back to the board. And so there is a possibility that the board, the EEOC can rule or weigh in on the removal after the board, but only after the board first has a chance to issue its own decision. Counsel, can I ask a question? I understand that you are relying on the MSPB authority, particularly the Lethbridge case. Is that correct? Yes. I'm wondering if there is any court case, appellate court case in any circuit that upholds this kind of bifurcated approach that you could go to two different agencies with a case that terminates in a termination. I'm not aware of any court that directly addresses this issue. But the federal circuit, which has been our primary reviewing court for the majority of our existence, has repeatedly reaffirmed the idea that the board can't rule on discrimination issues, except for when they come with an appealable action. Just to follow up on that question from Judge Schroeder, it seems that the only court that's really addressed this inextricably intertwined theory is the McAdams court from the Eighth Circuit, which I think adopts that theory. Now, the case is somewhat old, but do you have any, are you asking us to create a split with the Eighth Circuit on this? We are asking you to agree with Lethbridge. And so to the extent Lethbridge disagrees with the McAdams decision, we would ask for that. But does it, I mean, does Lethbridge disagree with McAdams? Is that your position? To the extent McAdams holds that inextricably intertwined claims need to be brought to the board for purposes of exhaustion, then yes, Lethbridge does disagree with McAdams. And McAdams was decided before the Lethbridge decision, is that correct? Yes, it was, Your Honor. Lethbridge was issued approximately a decade after McAdams. But the Chappelle decision by the Eleventh Circuit is consistent with McAdams, is it not? Yes, and that's a relatively more recent decision. To be perfectly candid, Your Honors, I'm not sure the board was actually even aware of the Chappelle or McAdams decision before this case came up. From our search of our records, it doesn't look like those cases were ever briefed before the board. And so we had no reason to know they even existed or disagreed with us. Well, yeah, I was going to ask you about that because it's sort of odd to me that we have McAdams. You know, that was the that was really the main circuit precedent on this. That was what was put to the district court sort of understandably. And, you know, we now have your views saying, well, the MSPB disagrees with that. But I hadn't seen anywhere the MSPB formally taking a position against McAdams or Chappelle until this case. And those those other circuit cases have been on the books for some time. They have, Your Honor, and a search of our records shows that McAdams appears in one decision one time, but not for this issue through all of board history and Chappelle has never been mentioned once. So we believe it's just never been briefed before the board. And we just were not aware of those decisions saying the opposite. OK, I just want to make sure that the board is standing by its decision on the merits that this termination was appropriate. For everything else aside from jurisdiction, Your Honor, we defer to the wisdom of the district court here. We're not going to disagree with them on anything. We're here solely just to talk about whether or not actions need to be brought to the board for purposes of exhaustion. What's kind of ironic, though, is that the although you're saying the actions don't need to be brought, it really couldn't be brought to the MSPB. In effect, a lot of these same actions were brought to the MSPB. They kind of rolled the MSPB has essentially pronounced on some of these things that we're now calling pre termination actions. And so it may be that you're, you know, let's assume for a second that you're right, that the MSPB does not have jurisdiction to rule on a claim of discrimination involving pre termination conduct. Fine. But it's already issued a merits ruling that essentially covers that topic. And so I think there's a question now. What is the impact of that ruling on any future claims? Does it have race judicata effect? Does it have some other kind of governing effect going forward? So there are two parts to that question. The first part being that what the board actually does is consider effectively anything that an appellant wants to put in front of it, that it will claim is evidence of discrimination for the final finding. It's only making a finding that the action itself is discriminatory. The removal here, but everything else is being considered for the very limited basis of whether or not those events serve as evidence that the final action was discriminatory or not. To your second part about the commission, the commission, without using the word race judicata collateral sample does appear to, on occasion, apply preclusive effect when the board rules first on similar issues. But the board never itself actually rules or makes a finding that, yes, this action or this investigation or this placement on admin duty was discriminatory. It only makes a finding that the removal itself was or was not discriminatory. Well, but if the board found that he lied when he testified, did it not? Yeah, the board found that he had credibility problems. This is correct. So I know you're I'm sorry. Go ahead. Go ahead. Well, I know your position is, you know, this is how you read the statute. This is how you read the regs. And I agree fully with you that that's that those are the guideposts here. But but taking a step back, does this make sense as a regime? The question of whether this regime is a wise regime is a different question than whether it's the mandated. I get that. But I am asking you, is this you represent the MSPB? You deal with these things day in, day out. Is this a sensible regime for federal employees to have to go through? It's not our job to write the regime, but I am interested in your perspective on that. The board's position is that ultimately we're going to follow the will of Congress and what Congress told us. To do there are the CSRA itself was and I see my time's expired. OK. When the CSRA was passed, it was a series of compromises between different interested parties. And one of those interested parties was to ensure the EOC gets a role and gets a say in different kinds of actions. And so the way to do that was to create the mixed case procedure, which comes with some baked in inefficiencies. There's no question about that. But it was a way to ensure the EOC got to have a say in certain things. And that the board's jurisdiction was only over certain personnel actions so that everyone would not try to appeal everything to the board. It was designed to try and remedy some of the prior inefficiencies of the Civil Service Commission. Whether it is truly successful in that is up for the wisdom of Congress to determine. But we are only going to execute what we've been told to execute. If I can ask Judge Rawlinson, may I ask one more question? If I get one as well. If in this case, he essentially had two different agency processes ongoing at roughly the same time. He had something going in the EEO. He had something going in the MSPB. Does the MSPB have a process for either deferring to the EEO, letting the EEO process go first before the MSPB would deal with the mixed case? Or can they happen at the same time? Because where I'm going with this is I get your legal argument that it doesn't matter if these things are factually related. But as it happens, they are factually related. And you have ongoing proceedings involving the same underlying issues going on in both the EEO and the MSPB. Do the agencies have any coordination where they say, well, you go first or we'll go first? Or do they just go at the same time? There is no official policy under which one agency will go first or the other. I believe due to the nature of the process, the MSPB typically ends up going first because we have a statutory deadline that we need to meet before we can. We must finish a discrimination appeal within 120 days. So I think the majority of the time we do end up going first. But that's not by policy. That's just by practicality with the statutes. Counsel, do you know if the Lethbridge decision was before or after the Chappelle decision? Lethbridge was issued after Chappelle, I think by about a year. I see my time has expired, so this court has no further questions. We thank you for letting us participate as amicus. And we ask that you reverse the district court on just the exhaustion issue. Thank you. Thank you. We'll hear from Mr. Owen. May it please the court, Kevin Owen for appellant Mr. Crow. A couple of questions that were raised by this court to Mr. Fung that I would want to weigh in on for a moment. Regarding the preclusive effect or treatment of MSPB findings on the EEOC and vice versa, as a practitioner before both the commission and the board, as a practical matter, the appellants, especially if they're represented, generally raise the fact that there are related claims before the board or the commission to the administrative judges, if they are before the hearings process, so that one agency could either stay processing in order for the decision on the other to occur or vice versa. Oftentimes, a board judge will stay a decision with a dismissal without prejudice process, so that, say, a finding of a failure to accommodate claim that preceded the action for removal could be adjudicated by the EEOC or vice versa. And there has been significant application of findings of fact from either the commission or the board in either decisions in cases before each agency's administrative judges. So is that what happened in this case, where the claims before the EEOC stayed at some point? The claims at the EEOC had been stayed off and on for pending an investigation, and then there was discovery, and then there was a stay both at the board in order for the investigation at the agency level to take place, and then there was a stay of discovery at the EEOC while the board adjudication was ongoing. But one thing to be clear, though, on claims preclusion, there is no claims preclusion from a decision from the board as it applies to the district court, because all decisions regarding Title VII at the administrative level are de novo, and that's been routinely recognized by the circuit. Can you tell us what the status of the EEOC claims is? So once my client had withdrawn and filed a civil action raising the EEO claims in the U.S. district court, they were then removed from the EEOC's administrative processing as a operation of the exhaustion requirement of the EEOC. So unlike the private sector process where there has to be the issuance of a right to sue letter, in the federal sector process, all a complainant needs to do in order to exhaust non-mixed EEO complaint issues before the EEOC is to file a formal complaint and wait 180 days. What case says that? Because I thought you didn't have a right to sue letter from the EEOC for federal and non-federal claims before you could bring them to district court. Correct. For the non-federal claims, that is correct. But for the federal claims, the citation there is 42 U.S.C. 2000E-16C. And it's also set forth in the Commission's regulations under 29 CFR 1614-407B. Okay, so 42 U.S.C. 2000E-16C. 16, Charlie. Okay, and then the EEOC regulations 1614-407? 407, Bravo. Okay, thank you. Counsel, you agree that we have jurisdiction to review the district court's decision with respect to upholding the MSPB decision. Isn't that correct? As it relates to the administrative review of the Title V issues where the district court is sitting as an appellate court or as to the Title VII conclusions on summary judgment for which the district court was reviewing de novo? Well, I don't know quite how the distinction works with respect to its upholding the MSPB decision. But it held that the challenge to the MSPB decision should fail. Is that correct? It did. And this is a topic of law that I think there is no first impression decision as to whether or not a circuit court of appeals can review a Title V appellate review by a district court of a decision of the Merit Systems Protection Board or whether that decision must be sent to the Supreme Court. Because the district court on a Title V claim is reviewing in place of the Federal Circuit Court of Appeals and not as a district court. And so on the Title V review allegations or issues in the complaint, I'm not aware of any case that indicates either way as to whether or not this court would have authority to review the Title V review as if it were the Federal Circuit. Well, I mean, your client's the one that brought the notice of appeal to us. You haven't argued. This is the first I'm hearing of any suggestion that the Ninth Circuit lacks jurisdiction. No, the answer is that it doesn't lack jurisdiction over the Title VII allegations on the summary judgment issue and the jurisdiction issue. There is a separate count in the complaint that requested that the district court sit in appellate review of the Title V allegations. Because if an MSPB appeal is adjudicated by the board and the appellant decides to get further review only on the Title V CSRA appropriate processing of the claim, then the case goes to the Federal Circuit Court of Appeals for review and the appellant must waive his discrimination claims. If appellant wishes to maintain his discrimination claims, he must take it to the U.S. District Court and any appellant review of the CSRA processing by the board is held by the district court. And I'd say that my time has elapsed. Well, if I may, Judge Valenson, I have a couple more questions for you. One is the following. There's, you know, we're told that there's a list of certain types of employment actions, such as a termination that the MSPB has jurisdiction over everything else that does not have jurisdiction over. What about a proposed termination? Because that was part of what happens here. There's some EEOC authority that seems to say, oh, no, you know, the MSPB, a termination, a proposed termination, these things are the same thing. But I see the MSPB in its briefing saying, you know, we do not have jurisdiction over a proposed removal. Do you have a position on whether the MSPB has jurisdiction over a proposed, in this case, proposed removal? I do. Insofar as federal employees are proposed for adverse actions frequently, demotions, suspensions, removals, and many times they're effectuated and other times they are not. And the situation where they're not effectuated, if an employee then filed an appeal to the board saying that proposal that was never implemented was discriminatory, the board would lack jurisdiction because the board only has jurisdiction when there is a taking. Fair enough. So then what about here where there is a removal? Does the MSPB have jurisdiction over a challenge to the proposed removal? No, it does not, because there can still be prohibited discriminatory animus for the proposing official that may be absent from the decision to remove by the deciding official. Okay. So, I mean, the EEOC, I've seen some of these rulings where they say, we know the MSPB has jurisdiction over a proposed removal. You basically are saying that's not correct. Correct. That's our position. May I ask you, so in this case, the non-termination claims were brought as part of the appeal from the board decision. Correct? The non-termination discrimination claims were not brought to the board adjudication by the board. They were at the commission exhausting there until the 180 days elapsed and he filed a civil action. But did you file a separate, I'm just trying to clarify, did you file a separate action in district court for the non-termination claims? No, it was all brought together as one discrimination claim for which was exhausted through two avenues. Right. But doesn't the statute that you cited and the regulation that you cited, don't they contemplate a separate action after the EEOC process has been utilized? So, the separate action that's contemplated by the statute would be the civil action filed in U.S. district court, if I understand your question. No, my reading of that statute, I think you would have to file a Title VII action and not doing it with an action brought under the statute governing the board. But there was a separate Title VII action because there were two counts raised in the complaint. One was discrimination under Title VII. The second would be administrative review of the CSRA claims. Procedurally, you didn't caption this as a Title VII action. There is a complaint, there's a Title VII complaint that cites the code and generally if there's a Title VII action, it's couched in that language and it's not joined with as part of an administrative appeal. It's an original case in the district court, not in a review of an administrative decision. That's my difficulty procedurally with saying that the Title VII claims were part and parcel of the administrative review. It contemplates the filing of a complaint under Title VII. Right, and our position is that a complaint under Title VII was filed with two counts, including the discrimination claim and the administrative review claim. Where in the record was the Title VII complaint filed? If you go to the excerpts of record, the civil action complaint, I don't have it directly in front of me one second. That's okay. In my recollection, the complaint was actually challenging the administrative decision that was made by the agency. That was just one count. The remaining count was requesting a de novo review of the Title VII litigation that was at the administrative process below. Mr. O'Reilly, can I ask you, if Judge Walensky will permit me, a couple more questions. I'll try to be brief. The first is, I asked Mr. Fung, why did Mr. Quill want to go to the MSPB? His answer was, you get a hearing there. Can you explain as a petitioner in this area, is that why people do this? Yes, because if you raise a removal claim before the EEOC, because the EEO complaints are filed with the agency, they're processed at the agency. At some point, once 180 days from that complaint has been filed, the employee has a right to request a hearing before the EEOC. If it was a mixed case and it was raised to the EEOC, the EEOC will dismiss the part of the case that it does not have jurisdiction over and keep the remaining issues that are not the adverse action and direct that back to the agency for issuance of a final agency decision. That issuance of the final agency decision triggers the employee's right to request a hearing before the Merit Systems Protection Board, because an EEOC judge will not and cannot have jurisdiction to issue a decision on, for example, a termination for a tenured non-probationary employee. If you take a termination claim through the EEOC process, the commission will send it to the board and vice versa. When you raise an appeal, when you file the appeal directly to the board after someone was terminated, if you start to list as issues that you want the board to adjudicate, failure to promote or being subjected to a sexual harassment hostile work environment that is not related to a removal action, the board will decline jurisdiction to hear and issue a decision over that. So the parties elect which forum based on where they can get discovery and a hearing. So you're saying that the EEOC actually could not have heard the termination claims here? Correct. Because Mr. Crow is not probationary and he was a Title V employee, he has only jurisdiction on the adverse action to the board and the EEOC does not. Is there a statute or reg that tells us this? There is a judge that talks about what the MSPB's jurisdiction is predominantly. It doesn't say that the EEOC can't adjudicate a termination. The EEOC has consistently held that it cannot adjudicate a termination when it's otherwise within the board's jurisdiction. Right, and what's the basis for that? If it's within, if there's a board, you mean even if they haven't gone to the board but have only gone to the EEOC? Correct, yeah, that's under 7702 which talks about the mixed case complaint processing for jurisdiction. It's very clear set forth in both the statute and the regulations as to where the division of labor is between the commission and the board on whether or not the commission can hear adverse actions for non-probation employees. Judge Rawlinson, may I ask a question here just to try to straighten out my thinking? The complaint did ask the district court to declare that the Merit Systems Protection Board decision was arbitrary and capricious. And the court did not do that. It upheld the decision of the board. Is that correct? Correct. Alright, now the board decision was that he was properly terminated as a result of inappropriate conduct. Is that correct? That is also correct. Now what else is left to be adjudicated? Whether or not the actual decision on the investigation, the conduct of the investigation, the issue to give him a proposal were all the product of Title VII discrimination. He's entitled to that. So is it your position that the district court did not rule on the Title VII issues? Many of the Title VII issues were not ruled upon because the district court found that there was no jurisdiction because of the belief that the appellant did not exhaust administrative remedies because he did not raise those pre-termination issues to the MSPB. But even then, the decision of the MSPB as it relates to the discrimination Title VII issue is still entitled to a de novo action in the U.S. District Court. And so we could have a situation in which the ultimate decision to terminate is upheld, but there is discrimination with respect to the manner in which, as to the events that preceded that? Yes, that is a possibility. We have any court decision which recognizes that we can go these two routes? Not that I'm aware of, Your Honor. Especially when you joined them together. That's the difficulty I'm having with your argument is you joined all of this together into one complaint when you didn't have to. But now you're trying to say that even though the district court found that there was no discrimination in the termination, that holding does not carry over to the other part of the decision. That's a little odd. I understand, Your Honor. And as Mr. Fung indicated, this is a confusing process. The Supreme Court has recognized that in Klockner v. Solis. And it is something that has baffled many a practitioner for decades. Is there any circuit case that goes with the Lethbridge decision? Because it seems, I asked this to Mr. Fung too, and so did Judge Schroeder. Are we basically being asked here to create a split with at least the 8th and possibly the 11th circuits? I'm not aware, and I've looked. I have not found any circuit case citing Lethbridge. Has the McAdams case had any purchase in this area? I mean, you seem to be practicing in this area. This case has been out there for a long time now. Is this something that people are just kind of realizing is out there now for the first time? It is not binding at the administrative level, at least as my understanding with the MSPB, because the MSPB is a reviewing authority. And the case law that's cited to before the board is the Federal Circuit Court of Appeals. MSPB has just been essentially ignoring McAdams for 30 years? Yes, Your Honor. Because it's not binding on them. Correct? It is not binding on the board because the Federal Circuit is its reviewing authority. In fact, if I were to cite before the Ameri-Systems Protection Board non-Federal Circuit or MSPB presidential decisions, I believe the Ameri-Systems Protection Board administrative judge's handbook indicates that that is only advisory and not even binding on the board's processes. So what we have here is we have competing areas of law for which appellants are expected to navigate. And we have a circumstance here. We have the EEOC with management holding 100-1 and the board's body of case law indicating that employees must navigate this split between the commission and the board. So are you saying that this should have been filed in the Federal Circuit rather than in the district court? No, because if my client filed in the Federal Circuit, he'd have to waive all his Title VII claims. And in order to pursue his discrimination claims, he has to file in U.S. District Court. So then the district court didn't have jurisdiction to review the MSPB decision? Because it should have gone to the Federal Circuit? It does have that jurisdiction. The statute specifically permits district courts to sit as an appellate body to review the Title V CSRA administrative process of the Ameri-Systems Protection Board as an appellate body, not as a district court body. And the appeal from the district court you think is properly here and not to the Federal Circuit? The appeal on the Title VII claims to the district court are properly before you because they could not be taken to the Federal Circuit because the Federal Circuit does not have jurisdiction over Title VII allegations. Because you're also seeking review in connection with this of a mixed case, you're not suggesting that there really should be two appeals here? You think this is all properly here in the Ninth Circuit? I do believe so, yes. Well, isn't the decision of the district court then final as to the MSPB decision? So when there is a review of the MSPB's decision, what the Federal Circuit, or if there's a review at the higher level of the board, what that looks at is whether or not the agency has met certain prerequisites under the Fifth Amendment for due process, whether or not there's harmful procedural error, and whether or not the agency has established by preponderant evidence the elements of the charge that were brought against an employee. There is a very wide body of case law before the Merit Systems Protection Board as to certain procedural elements. In fact, the charges and penalties before the Merit Systems Protection Board mirrors more like criminal law than Title VII law. And so when a case goes to the Federal Circuit, more often than not what's being addressed there is this minutia about whether or not certain burdens of proof were met, whether or not elements were clicked off, and whether or not the penalty is appropriate within the bounds of reasonableness set forth by that body of case law. And so when the Federal Circuit is looking at that for review, what they're looking at is the analysis before the Civil Service Reform Act, and not necessarily, and they're not necessarily, they're absolutely not looking at the Title VII discrimination issue. So here, if Mr. Crow had just gone to the MSPB, not raised what's essentially defense of discrimination, if he had just said, I was fired, but the evidence does just not support the basis for my firing, and he loses without raising discrimination, then that goes to the Federal Circuit. He has to appeal that directly to the Federal Circuit. It's a non-mixed case. Well, even if he raised it and he went to the Federal Circuit, there's actually a waiver that the Federal Circuit requires the petitioners to sign waiving their Title VII claims forever. And so had Mr. Crow not raised the discrimination claims before the administrative judge, he couldn't raise them in district because that would not be a exhaustion of administrative remedies. All right. Let's hear from Mr. Chang. Thank you. May it please the Court. Assistant United States Attorney Edrick M. Ching, appearing on behalf of Christine Wormuth, Secretary of the Army. In this case, the Army asserts that the district court properly dismissed the race discrimination and retaliation claims due to the failure of the plaintiff to exhaust the administrative remedies as to these claims. First, I would like to kind of address some of the points brought up by counsel during their arguments. Counsel seems to say that there is a bright line rule that the MSPB can only consider actions that are set forth in 5 U.S.C. 7512. Counsel also stated that not everything can be appealed to the MSPB. The Army's position is not that everything can be appealed to the MSPB. It is that matters, it is that discrimination matters which are related or inextricably intertwined with the removal actions needs to be brought before the MSPB. This is supported by the 8th Circuit's ruling in McAdams, the 11th Circuit's ruling in Chappell v. Chow, and Puchel from the 4th Circuit. Counsel, were any of those cases decided before the Lethbridge decision from the board? Yes, Your Honor. They were all decided before the Lethbridge decision, correct? Yes, Puchel was actually 2009, so that was after. Did you address the Lethbridge decision? No, I didn't see anything about Lethbridge in those three decisions. And I just also want to point out that McAdams was issued in 1995, which was before the 2003 Management Directive. But Chappell was issued in between the 2003 Management Directive and the 2005 Lethbridge. Your Honor, just while we're here, maybe I'm just jumping around a little bit too much and I apologize. Before we leave that point, so what should we do with those cases? They're not binding because they're not 9th Circuit decisions, and they seem to conflict with the decision from the agency that's charged with administering this statute. So what, if any, leverage should those cases have with us? Well, Your Honor, I believe that the cases, albeit not in the 9th Circuit, albeit from other circuits, are more binding than administrative type decisions. Aren't we supposed to give some measure of deference to an agency's interpretation of a statute that it's charged with administering? Yes, Your Honor, there is case law indicating that deference should be granted. However, when you look at the cases that I cited, the EEO cases of Vanetta B. and Belkis and Maximo, those were EEO cases. And the first two cases, Vanetta B. and Belkis, in those two cases, the MSPB administrative judge considered discrimination claims, which were inextricably intertwined with the removal action. So on one hand, Your Honor, you have the MSPB giving a position statement, and on the other hand, you have the MSPB administrative judges doing something different. Well, the MSPB identified some, you know, we're talking about decades of decisions here. And so perhaps you've identified some instances where they have not followed their own rules. But I think at the end of the day, we have leverage. And so the question for you is, are you basically, and we have the MSPB in this case coming before us and telling us this is the position of the MSPB. And so it now seems that we have the situation in which the Army, effectively represented by the Department of Justice, is saying we disagree with basically 20 years of MSPB directives on how this is all supposed to work. Yes, Your Honor, I agree it's a little awkward in this situation because, you know, normally in these kind of mixed cases, we're here to defend the decision of the MSPB. In this case, we're kind of in loggerheads with them. However, Your Honor, I'd also like to point out with regard to lethargy, I don't believe that lethargy is really on point. Because if you look at paragraph 10, it talks about in the lethargy decision, the MSPB discussed valid policy reasons for the board to consider non-appealable actions with appealable actions. And then it discussed inconsistent statements. However, in lethargy, it says, quote, in any event, we find that there were distinct actions at issue in the appellant EO complaints and his board appeal that if adjudicated would not necessarily produce inconsistent results. So in this case, although lethargy had language relied upon by opposing counsel in this case and the MSPB, lethargy can be distinguished because in the lethargy case, the discrimination claims were not related or inextricably intertwined. So the government's position at this point is that lethargy does not apply in this case because, you know, the fact pattern is different than the fact pattern in this case. In this case, with regard to the discrimination claims, the overtime claims, administrative claims, everything arose out of the decision with regard to Mr. Crow's alleged misconduct, the investigation, the decision to appoint the decision of Officer Captain Ballesteros to appoint Officer Oda to conduct the investigation. And whether Officer Oda was biased, even though he just did what Officer Captain Ballesteros told him in this case. So the Army, in this case, argues that lethargy is not really on point and rather we should look at, for example, as guidance, the Maximo case issued by the EEOC. And in the Maximo case, the EEOC, which I believe was 2020, ruled exactly on point with McAdams when it stated that it did not have jurisdiction over claims that the claimant could have raised before the MSPB. And telling in this case, Your Honor, with regard to our briefings, is that in our supplemental brief, which was done simultaneously with the plaintiff, we raised McAdams, we raised Pushel, we raised Chappell. We also raised Veneta B, Belkis, and Maximo, which are the EEO cases. And the MSPB did not address any of them in their supplemental briefings. So I think there's a big disconnect here, is that they're saying one thing as to, you know, the briefings say, and an argument today says, you know, we should only consider the claims which are in 7512. However, when you look at the practice of the MSPB administrative judges and the way the EEOC looks at it, is that people can bring related or inextricably intertwined discrimination claims to the MSPB. What is the basis for your position under the statute and regs? Because, you know, there I think the MSPB's position is fairly straightforward. It lists five things. Those are the only five things. That's it. So where are you getting inextricably intertwined or factually related from? Okay, so, Your Honor, with regard to that, if you look at 7702, that discusses the basis for the mixed case, I mean, the MSPB board jurisdiction. And it says that he made the claimant may appeal to the board of the discrimination that alleges a basis for the action in which discrimination was prohibited by Title VII. And that was interpreted by McAdams. That was interpreted. I'm sorry, that was interpreted by McAdams, but in the 11th Circuit. I'm sorry, McAdams in the 8th Circuit and Chappelle in the 11th Circuit, that anything inextricably intertwined or related to the removal needed to be brought before the MSPB. And there's a, you know, I'm not going to go over the policy reasons because I think that has been briefed. Counsel, may I ask you, the district court determined that the discrimination claims and the other non-termination claims were dismissed for lack of subject matter jurisdiction. Yes. Do you agree or disagree with that ruling? I agree with the ruling because the district court properly found that by not raising those claims, you know, the administrative leave, the overtime issues is that pursuant to McAdams, they waived it. They waived those claims and therefore the district court did not have jurisdiction of it because it was not properly exhausted. But if your argument is that they were inextricably intertwined, why would the district court be correct in dismissing them? Well, because pursuant to McAdams, the plaintiff needed to raise it before the MSPB and by failing to raise it before the MSPB, then he failed to exhaust his administrative remedies and therefore the district court doesn't have jurisdiction over it. Going back, what is the language you're pointing to to get inextricably intertwined? You referenced 7702. So what in there do you think supports the rule you want? Oh, so basically, Your Honor, is that the Army's position is that McAdams, Chappelle v. Chau, and the EEO cases that we cited interpreted 7702 to indicate that any inextricably intertwined or related cases or discrimination claims needed to be raised before the MSPB. Right, but what is the language? But the statute itself doesn't have any language that you're relying on. Is that correct? Yes, looking at the plain language and just trying to figure out with regard to their interpretation, I guess when you say alleges that of the word basis, maybe that's the term that the other districts looked at in McAdams, Chappelle, and Chau. And when they looked at basis, what is the basis? Would it be inextricably intertwined or closely related or whatever, you know, that language? A basis for the action means the action, the one of the five actions that the MSPB gets to review. It doesn't mean any action. Yes, yes, but I'm just trying to figure out. So, Your Honor, with regard to the Army's position is that the intertwined and the related language is an interpretation of 577, 5 U.S.C. 7702. But we would have to be persuaded by the reasoning of those courts that have interpreted the statute that way in order for us to rule the way you have argued. Is that correct? Yes, yes, Your Honor. You know, the rulings of two or three other circuits and also administrative cases, which I cited from the EOC and then two of which which indicate that the MSPB does or MSPB administrative judges do hear or do accept related discrimination cases. Going back to that management, before we leave that point, what's your response to opposing counsels to the board counsel's observation that the board is not bound by any of those decisions that are outside the federal circuit? And so therefore, those decisions are not a proper basis for making that ruling. What's your response to that? Do you agree that the board is not bound by those decisions? You know, Your Honor, looking at this case, I mean, looking at it through the eyes of an administrative judge, I'm not sure exactly what is given to them, whether there's guidelines, what they look at. But I would think that they would research, you know, for example, there are EEO cases out there, you know, saying that, you know, intertwined the related cases need to be brought before the board. And then that there are case laws saying that, however, looking at that, you know, as a practitioner, if somebody is going to bring a case before the MSPB and then, you know, a mixed case. And then when you look, when you do the research and you figure out, you know, on the line, I may have to appeal this to the district court. At that point, I'm assuming a practitioner would research the issue about, you know, how do I exhaust these claims? What do I need to do? So in that case, MSPB, you know, they can either dismiss it or they can accept it. But looking at McAdams, even if the MSPB declined it, I think the plaintiff still would have exhausted it because McAdams only talks about, you know, a claim that could have raised. So I'm assuming that if pursuant to McAdams and the other cases that if you raise it and you get denied, then probably McAdams is not applying that case. Can I go back to your point for just a moment to make sure I understand it with respect to Lethbridge? Yes. Was your point that in Lethbridge, you would not have had potential for inconsistent decisions, whereas in this case you would? Yes, because in the Lethbridge decision, I'm quoting directly from the opinion. It says that the various discrimination claims are distinct actions at issue, where in this case everything is intertwined because everything arose out of the alleged misconduct investigation, how the investigation was conducted and whether there was bias in the investigation. Do we really know that, though? I mean, I can't tell. There's various grounds for discrimination that have been put forward in this case, like sexual orientation, but also race and a couple other things. And some of that the MSPB did not touch. And I just I'm not you may be right, but do we actually know this at this point when the pre-termination claims have not been allowed to be vetted in the district court? Well, that's that that goes back to kind of my longstanding argument in this case, Your Honor, is that this was not raised by the by the plaintiff in the in the district court. This is kind of a pattern of the plaintiff raising, you know, for example, the management directive really game raising Lethbridge, not in the district court, not in the not in the opening briefs, but just raising it, for example, in supplemental pleadings. But it's you know, it's it's it's it's the plaintiffs. The plaintiff had the burden in the opposition. They could have raised it, you know, with regard to these claims and we would have rebutted it. But we in that case, we the army and the district court, we set forth the legitimate non-discriminatory reasons for for the termination, the various and for the various actions. And that we also argue that there was no pretext and the district court properly found that the that that the plaintiff did not even address not legitimate, non-discriminatory reasons or pretext in, you know, in its opposition or in its or in its concise statement in support of its opposition. Are there any additional questions for Mr. Cheney? I guess we have two minutes for rebuttal. Mr. Fromm, I have a question for you. Absolutely, Your Honor. What's your response to the distinction that Mr. Cheney made of Lethbridge, the Lethbridge decision and said it was distinguishable? What's your response? I don't believe that's exactly on point, Your Honor. I think that regardless of whether or not you're going to reach inconsistent results, the point of Lethbridge is that if an action is outside of our jurisdiction, it's just not going to be heard by the board. We don't have the authority to hear it. So I think what the board is talking about in Lethbridge there is really just the policy reasons as to why you may or may not reach a certain holding. But the holding itself is that because there is no jurisdiction over those actions, the board can't hear them. Are you counsel for the board? Yes, I am, Your Honor. And how long have you been counsel for the board? Coming up by nine years, Your Honor. And so during that period, has the board consistently taken the position that's espoused in Lethbridge? Yes, Your Honor. Lethbridge has been the binding on the board for approximately 20 years. To Mr. Cheney's point about the EEO decisions, those were commissioned decisions that effectively summarized what it thought the board was doing. But those aren't actually board decisions. To Judge Bress's point, even if they were one-off, incorrect administrative judge decisions, the board's position is that it doesn't have jurisdiction over those actions. But I believe what was actually happening, and it's somewhat impossible to know because the commission has a policy of keeping decisions anonymous. So we can't actually track those decisions that the commission issued. But what the commission was likely referring to was the board considering those pre-termination events as evidence of discrimination for the final finding. Well, let me ask, let me understand this. Let's have a kind of a hypothetical that a person, an employee is having sex on the job and is placed on administrative detail for 30 days on account of that. And then is, for the same reason, gets a proposed notice of termination and is terminated. They did an investigation, decided he was having sex on the job, and so he was terminated. And the position of the board is that the board can consider whether the termination was discriminatory, but it cannot consider whether putting it on the claim that he should not have been put on administrative leave was discriminatory. Is that where we are? Yes, Your Honor, that is the position of the board. That is the holding of lethargy and how the board has applied lethargy since it was issued. And so then he could go to the EEOC and claim that he was placed on administrative leave discriminatorily and the EEOC could decide that it was discriminatory? Yes, Your Honor, that is correct. Does anyone have any questions? There are questions for Mr. Crow, I mean for Mr. Owen. Okay, it appears that we've exhausted all of our questions. Thank you to all counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court and we are adjourned. This court for this session stands adjourned. Thank you.
judges: SCHROEDER, RAWLINSON, BRESS